FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ APR 06 2022 ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

CHRISTIAN KILLORAN, on behalf of his son,
AIDEN KILLORAN,

      Plaintiff,

      - against –

WESTHAMPTON BEACH SCHOOL DISTRICT,
MICHAEL RADDAY – Superintendent; SUZANNE
MENSCH, JOYCE DONNESSON, GEORGE KAST,
HALSEY STEVENS, as Board of Education Members,

      Defendants.

-------------------------------------------------------------------x

Index #:

Verified Complaint

**CV-22  1632**

SEYBERT, J.

LOCKE, M. J.

1.    As the Court is very familiar with the plaintiff's ongoing legal battle with the defendant

school district, there is no need to set forth a voluminous history of the background facts related

hereto.

*1ˢᵗ Cause of Action: (Individuals With Disabilities Education Act – IDEA)*

Procedural History

2.    The plaintiff's IDEA cause of action presents itself to the Court by way of the plaintiff's

request for the Court's appellate review of a New York State Department of Education

administrative decision, namely being a decision tendered by (SRO), Justyn P. Bates, on March

11, 2022 (No. 22-010).

3.    In this regard, the administrative record shall be available for the Court's review and

counsel herein shall procure the same through the New York State Department of Education's

"Office of State Review".

4.    In any event, the nature of the plaintiff's IDEA action relates to the propriety of his

educational placement for the academic year 2021-2022.

5.    In this regard, the plaintiff's "Annual Review Committee on Special Education (CSE)" was comprised of two meetings, held on June 9, 2021 and June 17, 2021.

6.    Notably, an "Annual Review CSE" is designed to set forth an appropriate educational program and placement for a student for the upcoming academic year.

7.    In accord with the foregoing, the subject "Annual Review CSE" was designed to set forth the plaintiff's appropriate educational program and placement for the 2021-2022 academic year.

8.    At the conclusion of the June 17, 2021 "Annual Review CSE Meeting", the CSE Chairperson, Mary Anne Ambrosini, set forth an educational placement recommendation for the plaintiff to be educated within a "12:1:1 special class setting", implemented within the Eastport Manor School District (ESM).

9.    The plaintiff disagreed with the appropriateness of such recommendation and thus commenced administrative due process against the defendant school district.

10.    Within the context of his administrative due process compliant, the plaintiff set forth, inter-alia, the following specific complaints: a) that the defendant district failed to recommend an educational placement in accord with the doctrine of "least restrictive environment" (LRE); b) that the CSE Chairperson acted "unilaterally"; c) that the CSE Chairperson "predetermined" the plaintiff's educational placement, and d) that the recommended educational placement did not offer an "appropriately ambitious" free and appropriate education (FAPE).

11.    The plaintiff herein re-asserts and incorporates the complaints set forth within his administrative due process compliant.

12.    In any event, subsequent to the plaintiff's filing of the administrative due process complaint, a due process hearing subsequently ensued, and was presided over by the assigned administrative Impartial Hearing Officer (IHO), Jeffrey Schiro.

13.     The administrative due process hearing concluded on December 21, 2021, and IHO

Schiro issued a decision dismissing the plaintiff's administrative due process complaint on

January 28, 2022.

14.     The plaintiff appealed IHO Schiro's administrative decision to the New York State

Department of Education (NYSDE) – specifically, the NYSDE's "Office of State Review".

15.     On March, 11, 2022, SRO, Justyn Bates dismissed the plaintiff's administrative appeal.

16.     In light of the foregoing, the plaintiff's IDEA based claim now profiles to the court as

being "administratively exhausted".

17.     The plaintiff herein argues that both IHO Schiro and SRO Baytes erred, and moreover,

that the defendant school district violated the plaintiff's rights as protected by the IDEA.

<u>Least Restrictive Environment (LRE)</u>

18.     The doctrine of LRE is a key component of the IDEA.

19.     The doctrine of LRE is supposed to be treated as a strong statutory presumption.

20.     The doctrine of LRE is supposed to be construed as a strong statutory presumption that

presumes that a student may be satisfactorily educated within a "general education setting",

irrespective of such student's disability.

21.     The IDEA and 8 NYCRR 200 hold that a student may not be removed from the "general

education setting" based solely upon the need to modify curriculum.

22.     The subject administrative record reveals that the defendant school district has never tried

to educate the plaintiff within a "general education setting" – even on a single occasion.

23.     The subject administrative record reveals that several of the CSE members believed that

the plaintiff could be successfully educated within a "general education setting".

24.     The subject administrative record reveals that there is was no documented objective data to support the contention that the plaintiff could not be successfully educated within a "general education setting".

25.     The subject administrative record reveals that there was not a single conversation held between the plaintiff's "special education teacher" and any of the "general education teachers", regarding the potential modification of curriculum or modified lesson planning or differentiated learning.

26.     The subject administrative record reveals that the CSE was precluded from considering the plaintiff's education within a "general education setting".

27.     The subject administrative record reveals that the only reason proffered by the defendant school district to suggest that the plaintiff could not be successfully educated within a "general education setting" was that the teachers would need to modify the curriculum to meet the plaintiff's educational needs.

28.     The subject administrative record reveals that the plaintiff harbors no behavioral, emotional, medical, physical, or psychological condition that would impede his ability to be successfully educated within a "general education setting".

29.     The subject administrative record reveals that the CSE failed to undertake a meaningful analysis regarding whether the plaintiff could be satisfactorily educated within a "general education setting".

30.     The subject administrative record reveals that the plaintiff could in fact have been satisfactorily educated within a "general education setting".

31.     The defendant school district profiles as being the LRE for the plaintiff.

32.    The CSE's proposed educational placement (ESM) does not profile as the LRE for the plaintiff.

33.    The subject administrative record reveals that ESM is not the plaintiff's chosen school district.

34.    The subject administrative record reveals that the ESM program did not offer an education within key core academic subjects.

35.    The subject administrative record reveals that the ESM program harbored a student with behavioral problems.

36.    The subject administrative record reveals that IHO Schiro and SRO Baytes erred in holding that the plaintiff could not presumably be satisfactorily educated within a "general education setting".

37.    The subject administrative record reveals that IHO Schiro and SRO Baytes erred in adopting the defendant school district's stated rationale(s) for asserting that the plaintiff could not be satisfactorily educated within a "general education setting".

38.    The doctrine of LRE also holds that a student may not be removed from the school district that he/she otherwise would be educated within unless such student's unique and individualized needs cannot be satisfied through employment of such student's home district's supplementary aids and services.

39.    The doctrine of LRE holds that a student must be educated as close to home as possible.

40.    The subject administrative record reveals that the overwhelming majority of Remsenburg residents, along with the plaintiff's brother and sister and all of his friends, attend the defendant school district.

41.    The subject administrative record reveals that the defendant school district possesses all of the requisite special education resources and services capable of satisfactorily addressing the plaintiff's educational needs.

42.    In fact, the subject administrative record reveals that the defendant school district is already educating "alternately assessed special education students", just like the plaintiff, within the defendant school district's High School.

43.    Even assuming that the plaintiff could not be integrated with the "alternately assessed special education students" currently being educated within the defendant school district's High School, the subject administrative record reveals that the plaintiff could be satisfactorily educated within the defendant school district within an "alternate setting", such as a "special class" or "hybrid format".

44.    The subject administrative record reveals that the ESM school district does not possess any special education resource or service that the defendant district does not itself possess.

45.    The doctrine of LRE also holds that a student's placement within the LRE must be pursued to the "maximum extent" appropriate.

46.    The subject administrative record reveals that the defendant district refused to integrate the plaintiff within lunch and electives within his home district, even assuming that he could not be successfully integrated with respect to his core academic program.

47.    The doctrine of "portability" holds that if a student's home district possesses the same resources and supports as an alternate school district, that the student's home district must be considered the superior setting and also the setting in accord with the doctrine of LRE.

48.    The subject administrative record reveals that the defendant school district possesses all of the requisite special education resources and services capable of satisfactorily addressing the plaintiff's educational needs.

49.    There is no universal premise that states that a student cannot be educated as a single student within a school district.

50.    There is no universal premise that supports a position that a school district cannot be legally compelled to educate a single student, if such school district possesses the special education resources and supplementary aids and supports capable of doing so.

51.    The governing regulations (8 NYCRR 200) concerning sizes of "special classes" only impose a maximum number of students and not a minimum number of students.

52.    The subject administrative record reveals that the defendant school district is already implementing a robust special education program for its students, including providing special education, related services, and consulting services for "alternately assessed special education students", but simply will not do so for the plaintiff.

53.    When the facts of the plaintiff's case are appropriately distilled through P. v. Newington Board of Education, 546 F.3d 111 (2nd Circuit 2008), it is clear that the defendant school district failed to place the plaintiff within the LRE.

54.    In any event, Newington is not dispositive of the LRE analysis required in the plaintiff's case because the plaintiff's case requires an analysis of whether or not the plaintiff could be integrated within a "special class" or "hybrid program", irrespective of whether or not he could successfully educated within a "general education setting".

55.    When the facts of the plaintiff's case are appropriately distilled through TM v. Cornwall Central School District, 752 F.3d 145 (2nd Cir. 2014), it is clear that the defendant district failed to place the plaintiff within the LRE.

56.    A school district's regulatory capacity to "outsource" its FAPE obligations cannot lawfully be viewed and analyzed in a vacuum, but rather must be held subservient to the mandates imposed by the IDEA.

57.    A school district's decision to educate a student within the LRE cannot be predicated upon "staffing" and/or "administrative" concerns.

Unilateral Pre-determination

58.    The deliberative process that is supposed to be undertaken by a CSE remains as an essential element of the due process contemplated by the IDEA.

59.    The deliberative process of a CSE is supposed to involve the meaningful input and recommendation of the CSE members.

60.    The deliberative process of a CSE is not supposed to be unilaterally usurped by the predetermination of a CSE Chairperson.

61.    The subject administrative record reveals that the CSE was precluded from considering certain educational placement options for the plaintiff within the defendant district.

62.    The subject administrative record reveals that the CSE did not recommend the plaintiff's educational placement within ESM.

63.    The subject administrative record reveals that the CSE believed that the 12:1:1 recommendation was going to be pursued within the defendant district.

64.     The subject administrative record reveals that the CSE Chairperson predetermined the plaintiff's educational placement outside of the defendant school district even before the CSE was convened.

Appropriately Ambitious FAPE

65.     All students, including students with the most significant learning disabilities, such as "alternately assessed special education students", like the plaintiff, are entitled to an education that is "appropriately ambitious".

66.     All students, including students with the most significant learning disabilities, are entitled to nevertheless access the same "general education curriculum" as their grade-level peers.

67.     People with Down Syndrome are prone to "modeling" as a key form of learning.

68.     The ESM program recommendation would potentially expose the plaintiff to behaviors that he would negatively model.

69.     The ESM program recommendation was not the LRE for the plaintiff.

70.     The administrative record reveals that not a single CSE member, other than the CSE Chairperson recommended the plaintiff's educational placement within ESM.

71.     The administrative record reveals that several CSE members voiced concern with the adequacy of the ESM program.

The fundamental mistake(s) of IHO Schiro

72.     The plaintiff incorporates and re-asserts the facts and arguments set forth within his post-hearing brief, which is part of the administrative record.

73.     The administrative record reveals that IHO Schiro erred in holding that the CSE fully reviewed the continuum of special education programs and considered alternatives before settling on the recommendation that the student attend a 12:1+1 special class at ESM.

74.    Further, the administrative record reveals that IHO Schiro erred in holding that the defendant school district did not predetermine the student's IEP recommendation.

75.    Further, the administrative record reveals that IHO Schiro particularly erred in holding that simply because of the plaintiff's current "present levels of performance (PLEPS)" in reading, math, writing, and speech were what they were, that even with modifications, that he would be unable to attain his goals within a "general education setting".

76.    Further, the administrative record reveals that IHO Schiro erred by holding that differentiated instruction could not effectively take place in a "general education setting", if the plaintiff was integrated.

77.    Further, the administrative record reveals that IHO Schiro erred in relying upon a false premise that a school district was not legally obligated to educate a single student, even if such school district evidenced that it possessed the special education resources and services to satisfactorily do so.

78.    Further, the administrative record reveals that IHO Schiro erred in viewing a school district's regulatory capacity to "outsource" its FAPE obligations in a proverbial vacuum, as opposed to recognizing that a school district's ability to do so must be constrained by the mandates of the IDEA.

79.    Further, the administrative record reveals that IHO Schiro erred in believing that since the ESM placement could arguably address the plaintiff's needs and goals, that it therefore profiled as the LRE.

80.    Further, the administrative record reveals that IHO Schiro erred in misapplying Newington.

81.    Further, the administrative record reeals that IHO Schiro erred in misapplying <u>TM v.</u>
<u>Cornwall</u>.

<u>The fundamental mistake(s) of SRO Baytes</u>

82.    The plaintiff incorporates and re-asserts the facts and arguments set forth within his post-hearing brief, which is part of the administrative record.

83.    The plaintiff incorporates and re-asserts the arguments set forth within his "Request for Review" and "Memoranda of Law", which is part of the administrative record.

84.    Additionally, an analysis of SRO Baytes decision, reveals that he erred in adopting the findings of IHO Schiro, as set forth within paragraphs 72-81 herein.

*2nd Cause of Action: Section 504 of the Rehabilitative Act of 1973 (504)*

85.    The plaintiff re-asserts the statements set forth within paragraphs 1-84.

*3rd Cause of Action: The Americans With Disabilities Act (ADA)*

86.    The plaintiff re-asserts the statements set forth within paragraphs 1-85.

87.    The administrative record reveals that the defendant district could have easily and satisfactorily addressed the plaintiff's educational needs, whether within a "general education setting", or an alternate format, such as a "special class setting" or "hybrid format".

*4th Cause of Action: 42 USC 1983 (1983)*

88.    The plaintiff is a disabled person and thus merits the protection of the IDEA, 504, and the ADA.

89.    The plaintiff is additionally entitled to "equal protection"

90.    The plaintiff is an "alternately assessed special education student".

91.    The defendant district possesses all of the special education resources and services capable of educating the plaintiff.

92.     The plaintiff profiles as being "similarly situate" to four (4) "alternately assessed special education students" who are currently being educated within the defendant school district's High School.

93.     Upon information and belief, the initials of these students are: "KM"; "K or C P"; "JH", and "MR".

94.     The fact that the plaintiff is "alternately assessed" makes him inherently similarly situate to the other "alternately assessed" students currently being educated within the defendant school district.

95.     In fact, "alternately assessed special education students" are similar in a number of ways.

96.     In fact, all "alternately assessed special education students" are defined as a class of students who are significantly cognitively disabled.

97.     Further, all "alternately assessed special education students" receive modified "general education curriculum".

98.     Further, all "alternately assessed special education students" receive modified grade-level learning standards.

99.     Further, all "alternately assessed special education students" have their mastery of curriculum measured by "digital precursors" along a "dynamic learning map", as opposed to standardized testing methodology.

100.    Further, all "alternately assessed special education students" have Individualized Education Plans (IEPs).

101.    Further, all "alternately assessed special education students" have Committees on Special Education (CSEs).

102.   Further, all "alternately assessed special education students" receive "related services" and "supplementary aids and services".

103.   Further, all "alternately assessed special education students" receive educational accommodations.

104.   Further, all "alternately assessed special education students" receive specialized instruction.

105.   Further, all "alternately assessed special education students" receive special education.

106.   Three (3) of the four (4) "alternately assessed special education students" currently being educated within the defendant school district have also have Down Syndrome, just like the plaintiff.

107.   The fact that the plaintiff has Down Syndrome, just like three (3) "alternately assessed special education students" who were being educated within the defendant school district, additionally profiles him as being "similarly situate" to such students.

108.   Notably, people with Down Syndrome possess a host of similar characteristics including the following: matching chromosomes, low intellectual functioning (IQ), similar physical traits and handicaps, similar susceptibility to other health conditions, and perhaps most importantly, similar learning profiles.

109.   In light of the foregoing, the plaintiff profiles as a "class of one", due to the differentiating treatment that he has received, relative to the "alternately assessed students" being educated within the defendant school district.

110.   The administrative record reveals that the defendant school district possesses all of the necessary special education resources and services capable of satisfactorily educating the plaintiff, and yet the defendant school district refuses to do so.

111.    Indeed, the foregoing reality is self-evident, in light of the fact that the defendant school district is already educating "alternately assessed special education students", just like the plaintiff, at the High School.

112.    In fact, educating the plaintiff does not require a single "special education resource or service" that the defendant school district is not already implementing to educate the "alternately assessed students" in the High School.

113.    In addition, the Court needs to recognize that the plaintiff does not need to be educated within the same class as the four (4) "alternately assessed special education students" that are currently being educated within the defendant school district.

114.    Indeed, even assuming that the plaintiff's age-disparity with such students is allegedly prohibitive, there is no reason why the plaintiff could not be educated beyond being integrated with such "alternately assessed special education students", whether within a "special class" of his own, or within a "hybrid format".

115.    The defendant school district is treating the plaintiff unequally because it is applying its special education resources and services to educate four (4) "alternately assessed special education students at the High School, and yet refuses to do so for the plaintiff.

<u>Bad Faith</u>

116.    The historical backdrop of the plaintiff's case reveals that prior to his enrollment and lawsuit against the defendant school district, the defendant school district had historically "outsourced" the post-elementary education of every single "alternately assessed special education student" that had ever come before it.

117.    The administrative record reveals that the defendant school district has weaponized the fact that the plaintiff does not have any age-cohorts to educate the plaintiff with, even though it is

the defendant district itself who the responsible party for creating such an alleged infirmity by "outsourcing" the post-elementary education of every single "alternately assessed special education student" that came before the plaintiff.

118.    The administrative record reveals that the CSE Chairperson precluded the CSE from considering any in-district educational placement, including a "general education placement setting", as well as placement within a "special class" with the "alternately assessed special education students", currently being educated within the defendant school district, as well as within a "special class"– as a single student, as well as within a "hybrid format".

119.    The administrative record reveals that the CSE Chairperson refused to recuse herself from the plaintiff's CSE, despite the fact that she was previously found culpable of violating the plaintiff's IDEA based rights.

120.    The defendant school district clearly possesses the ability to educate "alternately assessed special education students" at the High School, as it is already doing so, and yet it refuses to do so for the plaintiff.

121.    The CSE Chairperson refused to file for an "age-variance" for the plaintiff, and actually had to be administratively ordered to do so.

122.    The defendant school district has now been ordered to file for an age-variance for the plaintiff on two separate occasions.

123.    Upon information and belief, no school district in the history of New York State, other than the defendant school district, has ever been ordered to file for an "age-variance application" - let alone twice.

124. The defendant school district nevertheless sabotaged the "age-variance application" by failing to assert any educational justification in its support, and moreover affirmatively arguing against it.

125. In any event, even assuming that the plaintiff could not be integrated within the defendant school district's existing "alternately assessed special education class", due to his age, there is no reason why his education could not be satisfactorily delivered within an alternate format, such as within an alternate "special class" or "hybrid format".

126. The administrative record reveals that the CSE Chairperson made an educational placement recommendation unilaterally.

127. The administrative record reveals that the CSE Chairperson's stated reason for refusing to educate the plaintiff, as a single student, was based upon an administrative directive/order given to her by the defendant school district's prior Superintendent, which stated that she was prohibited from considering such a placement because doing so would not be a wise allocation of administrative resources.

**WHEREFORE**, the plaintiff respectfully requests the Court to overturn the administrative decisions of IHO Schiro and SRO Baytes, by holding that the defendant school district violated the IDEA. In addition, the plaintiff respectfully requests the Court to issue a judgment in his favor attendant to his ADA, 504 and 1983 claims. In light of the foregoing, the plaintiff requests that the Court issue a monetary judgment to account for compensatory damages, compensatory education, and punitive damages. Finally, the plaintiff requests the Court to issue an equitable order compelling the defendant school district to educate him within the defendant school district as the LRE, whether within a "general education setting" or alternative format, such as a "special class" or "hybrid setting".

16

Date: 4/4/22

x. _____
Christian Killoran, on behalf of the Plaintiff

# VERIFICATION

STATE OF NEW YORK    )
                     ) ss:
COUNTY OF SUFFOLK    )

CHRISTIAN KILLORAN, being duly sworn, deposes and says that he is the Plaintiff in the instant action and has read the foregoing COMPLAINT; deponent knows its content and knows that it is true to the best of deponent's knowledge, except as to those matters stated to be upon information and belief, and as to those matters' deponent believes them to be true.

CHRISTIAN KILLORAN

Sworn to before me this
_4_ day of April, 2022.

NOTARY PUBLIC

ANDREA PITNEY
Notary Public State of New York
Suffolk County No. 01PI6044574
Commission Expires July 10, 202_