UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------x
CHRISTIAN KILLORAN,
on behalf of his son, AIDEN KILLORAN;
CHRISTIAN KILLORAN; and
TERRIE KILLORAN,

                Plaintiff,       <u>OMNIBUS MEMORANDUM & ORDER</u>
                                No. 20-CV-4763(JS)(LGD)

    -against-

WESTHAMPTON BEACH SCHOOL DISTRICT;
SUZANNE MENSCH, AND JOYCE DONNESON,
as Board of Education Members;
MICHAEL RADDAY, as Superintendent;
MARYANN AMBROSINI,[1] as Director of
Pupil Personnel and CSE Chairperson,

                Defendants.
----------------------------------x
CHRISTIAN KILLORAN,
on behalf of his son,
AIDEN KILLORAN,

                Plaintiff,      No. 22-CV-1632(JS)(LGD)

    -against-

WESTHAMPTON BEACH SCHOOL DISTRICT;
MICHAEL RADDAY, as Superintendent;
SUZANNE MENSCH, JOYCE DONNESON,
GEORGE KAST, and HALSEY C. STEVENS,
as Board of Education Members,

                Defendants.
----------------------------------x

---

[1]  Plaintiff has misspelled Defendant Ambrosini's first name as "Mary Ann".  <u>Cf.</u> <u>Killoran v. Westhampton Beach Sch. Dist.</u>, No. 20-CV-4121, 2023 WL 5532920, n.1 (E.D.N.Y. Aug. 28, 2023) (hereafter, the "<u>Killoran August 2023 Order</u>").  If not already done so, the Clerk of Court is directed to correct said spelling to "MaryAnn" in the four Case Dockets subject to this Omnibus Memorandum & Order.

```
--------------------------------x
CHRISTIAN KILLORAN,
on behalf of his son,
AIDEN KILLORAN,

                    Plaintiff,         No. 23-CV-1114(JS)(LGD)

    -against-

WESTHAMPTON BEACH SCHOOL DISTRICT;
and MARYANN AMBROSINI,

                    Defendants.
--------------------------------x
CHRISTIAN KILLORAN,
on behalf of his son,
AIDEN KILLORAN,

                    Plaintiff,         No. 23-CV-1115(JS)(LGD)

    -against-

WESTHAMPTON BEACH SCHOOL DISTRICT,

                    Defendant.
--------------------------------x
```

Appearances:

For Plaintiff:      Christian Killoran, Esq., <u>pro se</u>
                    132-13 Main Street
                    Westhampton Beach, New York  11978

For Defendants:     Anne C. Leahey, Esq.
                    Anne Leahey Law, LLC
                    319 Thompson Street
                    Port Jefferson, New York  11777-1919


SEYBERT, District Judge:

<u>Pro se</u> plaintiff Christian Killoran ("Plaintiff" or

"Parent"[2]), in various capacities, <u>e.g.</u>, individually and as parent

---

[2]  While A.K.'s mother, Terrie Killoran, is also a named Plaintiff
in one of these cases, because her interests are aligned with those

to A.K., a child with Down Syndrome, has commenced numerous administrative challenges and subsequent and additional federal actions, all emanating from the development of A.K.'s individualized education plans ("IEPs"; singularly, "IEP") and subsequent placements pursuant to those IEPs and, for certain academic years, pursuant to an agreed-upon 2019 Pendency Placement Agreement. Parent has brought the instant suits against: Westhampton Beach School District ("Westhampton" or the "School District"); as well as, variously: Michael Radday, Superintendent of the School District; MaryAnn Ambrosini, sometimes individually and as Director of Pupil Personnel and CSE Chairperson ("Ambrosini"); and Joyce Donneson, George Kast, Suzanne Mensch, and Halsey C. Stevens, as members of the School Board (collectively, the "Defendants"). These suits are brought pursuant to: the Individuals with Disabilities Act ("IDEA"), 20 U.S.C. § 1400 et seq.; the Americans with Disabilities Act

---

of Christian Killoran, hereafter, the Court refers only to Parent Christian Killoran. However, the Court's rulings herein apply equally to Christian and Terrie Killoran.

Further, "the Court takes notice that Plaintiff [Christian Killoran], although proceeding pro se, is a registered attorney." Killoran v. Westhampton Beach Sch. Dist., No. 19-CV-3298, 2020 WL 4740498, at *4 (E.D.N.Y. June 24, 2020), report and recommendation adopted, 2020 WL 4743189 (E.D.N.Y. July 27, 2020). "Accordingly, although Plaintiff is proceeding pro se, his Complaint[s] [are] held to the same standards as pleadings drafted by lawyers." Killoran v. Westhampton Beach Sch. Dist., No. 20-CV-4121, 2022 WL 866816, at *4 (E.D.N.Y. Mar. 22, 2022) (hereafter, "Killoran March 2022 Order") (citing Bazadier v. McAlary, 464 F. App'x 11, 12 (2d Cir. 2012)).

("ADA"), 42 U.S.C. § 12101 <u>et seq.</u>; Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794(a) <u>et seq.</u>; and Section 1983 of Title 42 of the United States Code ("Section 1983"), 42 U.S.C. § 1983. Parent also challenges administrative decisions of different state review officers ("SROs"; singularly, "SRO"). He variously seeks monetary damages and compensatory education damages.

On October 24, 2023, the Court held an Omnibus Status Conference in these actions; it addressed Defendants' various pre-motion conference letters ("PMC Letters")[3] requesting permission to file dismissal motions.[4] The parties were informed the Court was construing the PMC Letters as Defendants' respective dismissal motions.[5] To the extent Parent had not responded to the PMC Letters, he was afforded the opportunity to do so.[6] (See <u>id.</u>)

---

[3] (<u>See</u> Case No. 20-CV-4763, PMC Letter, ECF No. 25; Case No. 22-CV-1632, PMC Letter, ECF No. 8; Case No. 23-CV-1114, PMC Letter, ECF No. 7; and Case No. 23-CV-1115, PMC Letter, ECF No. 8.)

[4] (<u>See</u> Case No. 20-CV-4763, Omnibus Minute Entry, ECF No. 32; Case No. 22-CV-1632, Omnibus Minute Entry,, ECF No. 26; Case No. 23-CV-1114, Omnibus Minute Entry,, ECF No. 13; and Case No. 23-CV-1115, Omnibus Minute Entry,, ECF No. 14.) In Case No. 22-CV-1632, the Court also heard oral argument on Plaintiff's Motion to Reopen (ECF No. 21); it rules on said Motion herein (<u>see</u> <u>infra</u> at 30-31).

[5] (<u>See</u> all Omnibus Minute Entries at 5, § IV.)

[6] (<u>See</u> <u>supra</u> note 5.)

Parent's responses have now been filed.[7]  As a result, presently before the Court are Defendants' respective Dismissal Motions.[8]  Thus, having considered the parties' written submissions and heard their arguments, for the reasons that follow, the Court: (1) in Case No. 20-CV-4763, GRANTS Defendants' Motion to Dismiss; (2) in Case No. 22-CV-1632, GRANTS Defendants' Partial Motion to Dismiss; (3) in Case No. 23-CV-1114, GRANTS Defendants' Motion to Dismiss; and, (4) in Case No. 23-CV-1115, GRANTS the School District's Partial Motion to Dismiss.

BACKGROUND

I.   Factual Background

The parties and the Court are familiar with the extensive facts leading to these litigations and, accordingly, assumes the parties' familiarity with same.[9]  At this point, the Court states

---

[7]  (See Case No. 20-CV-4763, PMC Response, ECF No. 33; Case No. 22-CV-1632, PMC Response, ECF No. 27; Case No. 23-CV-1114, PMC Response, ECF No. 14; and Case No. 23-CV-1115, PMC Response, ECF No. 15.)

[8]  (See supra note 4 (informing the reader Plaintiff's Motion to Reopen in Case No. 22-CV-1632 is also presently before the Court).)

[9]  See, e.g., Killoran March 2022 Order, 2022 WL 866816; see also Killoran v. Westhampton Beach Sch. Dist., Case No. 22-CV-6467, SRO Harrington June 23, 2023 Decision, No. 23-093, ECF No. 12-3, at 2-3 (listing 18 prior State-level administrative appeals of which A.K. was the subject), and at 4 n.3 (noting "[d]ue to the nearly continuous nature of the administrative due process proceedings and State-level administrative appeals—and related federal district court proceedings—involving this student, he has been receiving his special education program under various pendency placements since approximately the 2015-16 school year").

generally and briefly that A.K.: has Down syndrome; is an alternately assessed student; and, is eligible for special education as a student with intellectual disabilities.  As the Second Circuit has observed, Parent and the School District have been in a long-running dispute over A.K.'s education.  See, e.g., Killoran v. Westhampton Beach Sch. Dist., No. 22-204, 2023 WL 4503278, at *1 and n.1 (2d Cir. July 13, 2023) (hereafter, the "2d Cir. Brown Appeal") (citing Killoran v. Westhampton Beach UFSD, No. 21-2647, 2023 WL 4503151 (2d Cir. July 13, 2023) (hereafter, the "2d Cir. Seybert 2021 Appeal"); Killoran v. Westhampton Beach Sch. Dist., No. 22-1753, 2023 WL 4503274 (2d Cir. July 13, 2023) (hereafter, the "2d Cir. Seybert 2022 Appeal")).  In particular, since approximately the 2016-2017 academic year, Parent has not agreed with, and has challenged, the School District's IEPs for A.K., which IEPs have been created by the School District's Committee on Special Education ("CSE").  As a result, A.K. had been receiving his IEPs and corresponding special education

---

To the extent the Court provides background for context in a particular case, and such factual background is relevant to the Court's determination of one of the instant dismissal motions, those facts have been taken from the relevant Complaint and are assumed to be true for purposes of deciding the particular motion. See, e.g., Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004). Additionally, a document may be considered on a motion to dismiss where the plaintiff has "reli[ed] on the terms and effect of [the] document in drafting the complaint." Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (emphasis omitted).

programs under various pendency placements, including the 2019 Agreement,[10] until April 2023, when the CSE determined A.K.'s IEP should be delivered in the School District's 12:1:1 special education class. See, e.g., Killoran v. Westhampton Beach Sch. Dist., No. 22-CV-6467, Defs. Letter Update, ECF No. 27 (E.D.N.Y. May 3, 2023) (advising "the State Education Department, on March 6, 2023, granted an age variance permitting A.K.'s participation in the District High School's special class (12:1:1)" and "A.K. joined the class on April 19, 2023 where he is currently receiving instruction and related services"); see also, e.g., Killoran v. Westhampton Beach Sch. Dist., No. 20-CV-4121, 2023 WL 553290, at n.7 (E.D.N.Y. Aug. 28, 2023) (hereafter, the "Killoran August 2023 Order") (noting State's granting an age variance for A.K. for the 2022-2023 school year).

DISCUSSION

I.  Applicable Law

    A.  Rule 12 Dismissal

        The Court restates the well-established plausibility standard applied to dismissal motions brought pursuant to Rules 12(b) and (c) of the Federal Rules of Civil Procedure, as articulated in a prior ruling made by the Court in a case brought by Parent:

---

[10]  See Killoran March 2022 Order, 2022 WL 866816, at *1 (defining and explaining the "2019 Agreement").

To withstand a motion to dismiss, a complaint must contain factual allegations that "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This plausibility standard is not a "probability requirement" and requires "more than a sheer possibility that a defendant has acted unlawfully." Id. (internal quotation marks and citation omitted). Although the Court must accept all allegations in the complaint as true, this tenet is "inapplicable to legal conclusions." Id. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citation omitted). Ultimately, the Court's plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

In deciding a motion to dismiss, the Court is confined to "the allegations contained within the four corners of [the] complaint," Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998), but this has been interpreted broadly to include any document attached to the complaint, any statements or documents incorporated in the complaint by reference, any document on which the complaint heavily relies, and anything of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (observing that a document is "integral" if the complaint "relies heavily upon its terms and effect").

Killoran March 2022 Order, 2022 WL 866816, at *3 (granting Defendants' dismissal motion). "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim." Killoran August 2023 Order, 2023 WL 5532920, at *3 (quoting Lively

v. WAFRA Inv. Advisory Grp., Inc., 6 F.4th 293, 301 (2d Cir. 2021)

(further citation omitted)).

    B.   <u>IDEA Claims</u>

       In one of its July 2023 trilogy <u>Killoran</u> summary orders,

the Second Circuit stated:

> Under the IDEA, a school district must provide services "tailored to meet the unique needs of a particular child, and . . . reasonably calculated to enable the child to receive educational benefits." <u>Gagliardo[ v. Arlington Cent. Sch. Dist.]</u>, 489 F.3d [105,] 107 [(2d Cir. 2007)] (internal quotation marks omitted). To administer these services, a school district must develop an individualized education program ("IEP") each year for each student with a disability. <u>M.H.[ v. N.Y.C. Dep't of Educ.]</u>, 685 F.3d [217,] 224 [(2d Cir. 2012)].
>
> For an IEP to be adequate under the IDEA, it must be "likely to produce progress, not regression, and . . . afford[ ] the student with an opportunity greater than mere trivial advancement." <u>Cerra v. Pawling Cent. Sch. Dist.</u>, 427 F.3d 186, 195 (2d Cir. 2005) (internal quotation marks omitted). It must also "ensure that '[t]o the maximum extent appropriate, children with disabilities . . . are educated with children who are not disabled.'" <u>T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.</u>, 752 F.3d 145, 151 (2d Cir. 2014) (alterations in original) (quoting 20 U.S.C. § 1412(a)(5)(A)). "In other words, the state must seek to educate each child with a disability in his or her LRE." <u>Id.</u>
>
> "In determining whether an IEP complies with the IDEA, courts make a two-part inquiry that is, first, procedural, and second, substantive. At the first step, courts examine whether there were procedural violations of the IDEA, namely, whether the state has complied with the procedures set forth in the IDEA. . . . Courts then examine

> whether the IEP was substantively adequate,
> namely, whether it was reasonably calculated
> to enable the child to receive educational
> benefits." <u>R.E. v. N.Y.C. Dep't of Educ.</u>, 694
> F.3d 167, 189–90 (2d Cir. 2012) (alterations,
> citations, and internal quotation marks
> omitted). Procedural inadequacies render a
> proposed placement violative of the IDEA when
> they "cumulatively result in the denial of a
> FAPE[11] even if the violations considered
> individually do not." <u>Id.</u> at 190. Substantive
> inadequacies automatically render a proposed
> placement violative of the IDEA. <u>Id.</u>

<u>2d Cir. Seybert 2021 Appeal</u>, 2023 WL 4503151, at *2; <u>see also</u>
<u>Killoran v. Westhampton Sch. Dist.</u>, No. 20-CV-4763, 2022 WL 954851,
at *1-2 (E.D.N.Y. Mar. 30, 2022) (hereafter, the "<u>Compensatory Ed.</u>
<u>Denial Order</u>") (describing the statutory framework for IDEA
cases); <u>Killoran March 2022 Order</u>, 2022 WL 866816, at *4
(discussing the IDEA's stay-put provision).

  C. <u>ADA and Section 504 Claims</u>

   In another of its July 2023 trilogy <u>Killoran</u> summary
orders, the Second Circuit stated:

>  Though there are "subtle differences"
> between the ADA and the Rehabilitation Act, we
> generally "treat claims under the two statutes
> identically," applying the same standards to
> both. <u>Henrietta D. v. Bloomberg</u>, 331 F.3d
> 261, 272 (2d Cir. 2003) (citation and internal
> quotation marks omitted). To make a claim
> under either statute, Plaintiff must show that
> (1) A.K. "is a qualified individual with a
> disability"; (2) Defendants are "subject to
> one of the Acts"; and (3) A.K. "was denied the
> opportunity to participate in or benefit from
> [Defendants'] services, programs, or

---

11 "FAPE" is an acronym for "Free Appropriate Public Education".

activities, or was otherwise discriminated against by the [Defendants] because of his disability." <u>McElwee v. Cnty. of Orange</u>, 700 F.3d 635, 640 (2d Cir. 2012).

"Under both statutes, a defendant discriminates when it fails to make a reasonable accommodation that would permit a qualified disabled individual to have access to and take a meaningful part in public services." <u>Id.</u> at 640. (citation and internal quotation marks omitted). "A plaintiff alleging that he was denied a reasonable accommodation bears the burdens of both production and persuasion as to the existence of some accommodation that would allow him to meet the essential eligibility requirements of the service, program, or activity at issue." <u>Id.</u> at 642.

<u>2d Cir. Brown Appeal</u>, 2023 WL 4503278, at *2-3; <u>see also</u> <u>Killoran August 2023 Order</u>, 2023 WL 5532920, at *4 (same).  And, as this Court previously elucidated:

Notably, a violation of the IDEA, without more, is insufficient to support a claim of disability-based discrimination under the ADA or Section 504.  <u>See</u> <u>French v. N.Y. State Dep't of Educ.</u>, 476 F. App'x 468, 472-7[3] (2d Cir. 2011) (a "fail[ure] to show that the alleged 'discrimination' is anything more than a rehashing of [the plaintiff's] allegation that the defendants failed to provide her with a FAPE" warrants dismissal of plaintiff's ADA and Section 504 claims).  Rather, where a plaintiff asserts denial of a FAPE, there must be evidence that the school district acted with "deliberate or reckless indifference to the student's federally protected rights" or with "bad faith or gross misjudgment." <u>Pape v. Bd. of Educ. of Wappingers Cent. Sch. Dist.</u>, No. 07-CV-8828, 2013 WL 3929630, at *11 (S.D.N.Y. July 30, 2013) (cleaned up); <u>see also</u> <u>S.W.[ v. Warren]</u>, 528 F. Supp. 2d [282,] 290 [(S.D.N.Y. 2007)] ("[P]laintiffs can rely on Section 504 to claim they are denied access

> to a free appropriate education, as compared
> to the free appropriate education non-disabled
> students receive, if they can show that
> Defendants acted with bad faith or gross
> misjudgment in the administration of
> disability services.").

_Killoran March 2022 Order_, 2022 WL 866816, at *7 (footnote omitted); _see also Killoran August 2023 Order_, 2023 WL 5532920, at *4 (same).

> D.   Section 1983 Class-of-One Equal Protection Claims

This Court has previously articulated the relevant law for a class-of-one equal protection claim brought pursuant to Section 1983.  Said law is restated herein:

> Pursuant to the Fourteenth Amendment's
> Equal Protection Clause, the Government must
> treat "all similarly situated people alike."
> _Harlen Assocs. v. Inc. Vill. of Mineola_, 273
> F.3d 494, 499 (2d Cir. 2001) (citing _City of_
> _Cleburne v. Cleburne Living Ctr._, 473 U.S.
> 432, 439 (1985)). The protections afforded by
> the Equal Protection Clause extend to
> "individuals who allege no specific class
> membership[,]" known as "class of one
> claims[,]" "where the plaintiff alleges that
> [ ]he has been intentionally treated
> differently from others similarly situated and
> that there is no rational basis for the
> difference in treatment." _Id._ (quoting _Vill._
> _of Willowbrook v. Olech_, 528 U.S. 562, 564
> (2000) (per curiam)).
> To prevail on a "class of one" claim,
> "'the plaintiff must point to at least one
> other individual whose circumstances, aside
> from being treated more favorably than
> plaintiff, are 'prima facie identical' in all
> other respects.'" _MB v. Islip Sch. Dist._, No.
> 14-CV-4670, 2015 WL 3756875, at *10 (E.D.N.Y.
> June 16, 2015) (cleaned up); _see also_
> _Clubside, Inc. v. Valentin_, 468 F.3d 144, 159

(2d Cir. 2006) ("[C]lass-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." (emphasis added)). More specifically, a plaintiff must establish that he and a comparator are "prima facie identical" by showing:

> (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake.

Ruston v. Town Bd. for Town of Skaneateles, 610 F.3d 55, 59-60 (2d Cir. 2010), cert. denied, 562 U.S. 1108 (2010) (quoting Clubside, 468 F.3d at 159).

To survive a motion to dismiss, a complaint must make sufficient factual allegations in support of this similarity requirement. See Ruston, 610 F.3d at 59 (citing Iqbal, 556 U.S. at 678.) Courts require "more than a bare allegation that other individuals were treated differently." Vaher v. Town of Orangetown, N.Y., 916 F. Supp. 2d 404, 435 (S.D.N.Y. 2013) (citation omitted). "[T]he court must [] determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated." Id. at 434 (quoting Mosdos Chofetz Chaim, Inc. v. Vill[.] of Wesley Hills, 815 F. Supp. 2d 679, 697-98 (S.D.N.Y. 2011)).

Of relevance to this action, the Second Circuit recently recognized "that '[t]here is no precise formula to determine whether an individual is similarly situated to comparators.'" Hu v. City of N.Y., 927 F.3d 81, 97 (2d Cir. 2019) (quoting McDonald v. Vill. of Winnetka, 371 F.3d 992, 1002 (7th Cir. 2004); citing Lindquist v. City of

Pasadena, Texas, 669 F.3d 225, 234 (5th Cir. 2012) ("[T]he inquiry is case-specific and requires us to consider the full variety of factors that an objectively reasonable decisionmaker would have found relevant in making the challenged decision." (citation omitted))). The Hu Court instructed that the "question of 'whether parties are similarly situated is [generally] a fact-intensive inquiry' that depends heavily on the particular context of the case at hand." Id. (quoting Clubside, Inc. v. Valentin, 468 F.3d 144, 159 (2d Cir. 2006); citing Jennings v. City of Stillwater, 383 F.3d 1199, 1214 (10th Cir. 2004) ("Inevitably, the degree to which others are viewed as similarly situated depends substantially on the facts and context of the case.")).

Killoran v. Westhampton Beach Sch. Dist., No. 19-CV-6663, 2022 WL 3309223, at *3-4 (E.D.N.Y. Aug. 10. 2022) (hereafter, the "Killoran August 2022 Order"), aff'd, 2d Cir. Seybert 2022 Appeal, 2023 WL 4503274; see also Killoran August 2023 Order, 2023 WL 5532920, at *7-8. (same).

II.  Application

A.  **Case No. 20-CV-4763** (re: 2019-2020 School Year)

In this action, in its Compensatory Ed. Denial Order, the Court previously denied Parent's Motion for Partial Summary Judgment regarding SRO Bates' September 16, 2020 Decision denying A.K. compensatory education notwithstanding the SRO's reversal of the IHO's underlying determination that the School District had provided A.K. with a FAPE in the least restrictive environment ("LRE") pursuant to the IDEA; in other words, the Court denied

Parent's IDEA claim.   (See Case Docket, ECF No. 22.[12])   Now, pursuant to Rule 12(c), Defendants seek dismissal of Parent's remaining claims, i.e., alleged violations of the ADA, Section 504, and Section 1983.   (See id., PMC Motion, ECF No. 25.)

      1.   The Parties' Positions

      Defendants contend Parent's ADA and Section 504 claims are based on no more than a violation of the IDEA, which is well-established as being insufficient to plausibly allege such causes of action.   (See id. at 2.)   They further assert that Parent's Section 1983 cause of action, another class-of-one claim, "is supported only by the conclusory assertion that A.K. is like . . . three comparator students because he is a post-elementary school student and is an alternately assessed special-education student and by the speculative assertion that 'a comparative analysis of his [IEP]' and IEPs of the three comparator students 'will reveal further inherent similarities.'" (Id. (quoting Compl., ECF No. 1, ¶¶ 104, 105).)   And, in any event, Parent "cannot use Section 1983 to obtain damages for IDEA violations absent allegations that he was denied IDEA's 'procedural safeguards or administrative remedies.'"   (Id. (quoting Killoran March 2022 Order, 2022 WL 866816, at *9; further citation omitted).)   Such is not the case

---

[12]  The Compensatory Ed. Denial Order is also available on the Westlaw database: Killoran v. Westhampton Beach Sch. Dist., No. 20-CV-4763, 2022 WL 954851 (E.D.N.Y. Mar. 30, 2022).

here.   (See id. (stating "the administrative record previously filed in this Court reveals that Plaintiffs were fully accorded the procedural safeguards and administrative remedies of the IDEA").)

In opposition and as to his ADA and Section 504 claims, Parent argues these claims "are valid because his [administrative due process] complaint illustrates how the [D]efendants discriminated against" A.K., "above and beyond violating the IDEA" since that complaint "sets forth how the [D]efendants entirely precluded any consideration whatsoever to place [A.K.] within the same 'continuum of placement options' offered to the other students who were being educated within the [School District]."  (Case Docket, PMC Response, ECF No. 33, at 1.)  Plaintiff contends the School District "chose not to educate [A.K.] within an 'alternately assessed special class format' simply because of his age."  (Id. (footnoting that while a school district may request an age variance from the state, the School District refused to do so).)  Parent asserts the School District's discrimination is demonstrated by its position that because there were "no alleged age-appropriate age cohort to educate [A.K.] along side," "it simply did not have to educate a student like [A.K.]."  (Id. at 2.)  He further maintains the School District's "exclusionary posture was utterly malicious and effectuated with deliberate and/or reckless indifference or with bad faith or gross

misjudgment" as underscored by its simultaneous refusal to consider educating A.K. as a single student within an "alternately assessed special class format" and "to apply for an age-variance which would have facilitated [A.K.'s] inclusion within" the School District's existing "alternately assessed special class". (Id.)

Then, as to his class-of-one equal protection claim, Parent baldly purports A.K. "profile[s] as being educationally similarly situate[d] to his identified class of comparators" in the School District's existing "alternately assessed special class." (Id.)  To buttress his claim, Parent contends all the students in the School District's "alternately assessed special class" were of differing ages and grade levels, like A.K.; yet, those students were "determined to be educationally similar for purposes of educational instruction and grouping." (Id.)

Of note:  None of Plaintiff's arguments are supported by citations to his Verified Complaint. (Compare PMC Response, in toto, with Compl., ECF No. 1.)

    2.  Analysis

        a.  The ADA & Section 504 Claims

Having carefully reviewed Plaintiff's Complaint,[13] the Court finds Plaintiff cannot make out a prima facie case under the

---

[13]  The Court has also considered Parent's administrative due process complaint and the transcripts of A.K.'s relevant annual review, which Parent incorporated by reference. (See Case Docket, Compl., ¶¶ 69, 90); see also Killoran August 2023 Order, 2023 WL

ADA or Section 504.   While there is no dispute A.K. is disabled under the terms of the ADA and Section 504 and the School District is subject to both of those statutes, Plaintiff has failed to allege facts that plausibly support his claims the School District did not provide reasonable accommodations to A.K. or discriminated against A.K. because of his disability, and thereby acted with "deliberate or reckless indifference" or "bad faith" or gross misjudgment."   See, e.g., Killoran August 2023 Order, 2023 WL 5532920, at *4-5.   Instead, his Complaint is compiled of threadbare recitals of the elements of his ADA cause of action (see, e.g., Compl. ¶¶ 71, 74, 78, 80, 82), and Section 504 cause of action (see id. ¶ 91), supported by vague, conclusory statements (re: ADA claim, see id. at ¶¶ 72, 73, 75-77, 81, 83, 84-86; re: Section 504 claim, see id. at ¶ 92), which does not suffice.   See Killoran August 2023 Order, 2023 WL 5532920, at *3 (quoting Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (further citation omitted)); see also Killoran March 2022 Order, 2022 WL 866816, at *8 ("Plaintiff makes no allegation of bad faith or gross misjudgment on the part of the [School] District; rather, he baldly alleges that 'the

---

5532920, at *3 (in deciding a Rule 12(c) motion, "the Court is confined to the allegations contained within the four corners of [the] complaint", which includes "any document attached to the complaint, any statements or documents incorporated in the complaint by reference, and document upon which the complaint heavily relies, and anything of which judicial notice may be taken" (internal quotation marks and citations omitted)).

school district's actions reflect nothing short of abject malice, gross indifference and/or retaliation against plaintiff.'  Such conclusory allegations are insufficient to plausibly state a discrimination claim." (citations omitted)).  In sum, Plaintiff's Complaint contains no factual allegations that would substantiate plausible ADA or Section 504 claims.

Moreover, it is well-settled that "[e]vidence of an IDEA violation, without more [] is insufficient to demonstrate a violation under either [the ADA or Section 504]." 2d Cir. Brown Appeal, 2023 WL 4503278, at *3 (citation omitted). Hence, Parent's reliance on the SRO's decision that the School District violated the IDEA for the 2019-2020 school year (see Compl. ¶ 89), without more, is unavailing to maintain Parent's ADA or Section 504 claims.

b.   The Section 1983 Class-of-One Claim

Plaintiff's class-of-one cause of action fairs no better.  Like other of his federal actions where he has brought class-of-one equal protection claims, here, Parent fails to "point to at least one other individual whose circumstances, aside from being treated more favorably than plaintiff, are prima facie identical in all other respects." Killoran March 2022 Order, 2022 WL 866816, at *9 (quoting M.B., 2015 WL 3756875, at *10); see also id. at *10 (where "Plaintiff fail[ed] to even identify another student purportedly similar to A.K.", dismissing Plaintiff's class-of-one claim since his bare-boned allegations, e.g., A.K.

"is being denied the right to a . . . FAPE . . . in the same manner as all other special education students", "fell well-short of providing allegations plausibly supporting his claim that A.K. is being treated differently from at least one other student whose circumstances are identical to those of A.K")); see also, e.g., Killoran August 2022 Order, 2022 WL 3309223, at *8 (notwithstanding identifying three other alternately assessed students with Down Syndrome, finding Parent's allegations too general in nature to plausibly allege an extremely high degree of similarity required to maintain a class-of-one equal protection cause of action), aff'd, 2d Cir. Seybert 2022 Appeal, 2023 WL 4503274, at *2 ("Plaintiffs allege that because A.K. and the comparators are alternately assessed and because some of the comparators also have Down syndrome, they are similarly situated.  These allegations, however, do not identify specific characteristics that apply to A.K. and the comparators beyond those that could apply to any alternately assessed student.").  Rather, and without even identifying them by way of initials, Parent baldly states "there are three [other] 'alternately assessed special education students' who are being afforded an education at the secondary level with the [D]efendant [School D]istrict", who "are all post-elementary aged students", and that a comparison of A.K.'s IEP with that of these other three student "will reveal further inherent similarities existing between all of them."  (Compl. ¶¶ 102-105; see also id. at ¶ 101 ("The plaintiff

submits that all 'alternately assessed special education students' inherently share similar student profiles and are this 'similarly situated'.".)   These class-of-one allegations are even vaguer than those made in other complaints brought by Parent and which this Court has repeatedly found wanting.  See, e.g., Killoran August 2023 Order, 2023 WL 5532920, at *7-8 (rejecting more detailed allegations as "too conclusory to plausibly allege the extremely high degree of similarity required to state a cognizable class-of-one claims" (collecting other Killoran cases dismissing class-of-one claims for deficiencies in allegations of similarities with purported comparators)).   Hence, given the dearth of allegations of a high degree of similarity between A.K. and any purported comparator alternately assessed special education students, Plaintiff cannot prevail on his class-of-one claim.  See Ruston v. Town Bd. for Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010).

Finally, to the extent Parent attempts to rely upon the age variance granted by the State's Education Department for the 2022-2023 academic year, that is unavailing to support his class-of-one claim. (See PMC Response at 2.)  This case concerns the 2019-2020 school year.  Thus, the issue is whether "A.K. was prima facie identical to student's in the School District's [2019-2020] school year 12:1:1 class."  Killoran August 2023 Order, 2023 WL 5532920, at *8.  "[N]otwithstanding the NYSED's[14] granting A.K. an

---

[14]   "NYSED" is the acronym for the New York State Education Department.

age variance for a subsequent academic year, because Plaintiff fails to plausibly allege how A.K.'s circumstances for the [2019-2020] academic year were prima facie identical to any alleged similarly situate[d] student, his [class-of-one] Equal Protection claim cannot survive the present Dismissal Motion."  Id.

B.  **Case No. 22-CV-1632** (re: 2021-2022 School Year)

By this action, Parent seeks appellate review of the March 11, 2022 Decision of SRO Bates regarding A.K.'s educational placement for the 2021-2022 academic year.  (See Case Docket, Compl., ECF No. 1, ¶ 2 (identifying Bates Mar. 11, 2022 Decision, No. 22-010); see also id. ¶¶ 3-84.)  Parent has also brought claims pursuant to the ADA and Section 504, as well as a class-of-one equal protection claim; based upon these claims, Parent seeks compensatory damages, compensatory education, and punitive damages. (See id. at "WHEREFORE" clause.)  Defendants do not seek dismissal of Plaintiff's IDEA claim; instead, they seek the dismissal of "[P]laintiff's claims for monetary damages and equitable relief" sought pursuant to the ADA, Section 504, and Section 1983.  (Case Docket, PMC Letter, ECF No. 8.)

1.  The Parties' Positions

Once more, Defendants argue Parent's ADA and Section 504 claims are based on no more than a violation of the IDEA, which is insufficient to support such claims.  (See id. at 1-2.)  This deficiency is compounded by the lack of plausible allegations of

deliberate or reckless indifference, bad faith, or gross misjudgment. (See id. at 2.) Moreover, since Parent's class-of-one equal protection claim is supported by conclusory allegations regarding purported comparators, he cannot maintain his equal protection claim. (See id. (citing Killoran March 2022 Order, 2022 WL 866816, at *10).) To the extent Plaintiff seeks the alternative remedy of having the School District create a new program for A.K., Defendants maintain that is not an available option. (See id. (citing Streck v. Bd. of Educ. of E. Greenbush Sch. Dist., 280 F. App'x 66, 68 (2d Cir. 2008) (further citation omitted)).) Defendants also contend Parent's request for equitable relief is equally untenable since he "fails to meet the pleading standards for injunctive relief." (Id. at 2-3.) Finally, relying upon the Court's Killoran March 22 Order, pertaining to A.K's 2020-2021 school year, in which the Court dismissed Plaintiff's ADA, Section 504, and Section 1983 claims, Defendants assert said Order has preclusive effect here because Plaintiff presents identical threadbare pleadings in this action. (See Case Docket, PMC Letter at 3.)

        In opposition and as to his ADA and Section 504 claims, Parent generally argues the School District is at fault for creating a situation where A.K. was outside the permitted 36-month-age-span for placement in the School District's "alternately assessed special classes" and, then, "refusing to

apply for an age-variance" for A.K. which would have permitted his placement in such a class.  (Case Docket, PMC Response, ECF No. 27, at 1-2.)  Parent also contends his claim of discrimination is based upon A.K.'s "status as an 'alternately assessed special education student' which served as the basis for the [D]efendants' exclusionary posture . . . ."  (Id. at 2.)  He does not articulate any alleged deliberate or reckless indifference, bad faith, or gross misjudgment by Defendants.  (See id. at 1-2.)

Then, regarding his Section 1983 claim, Parent again generally lays blame with Defendant School District asserting it "refused to educate [A.K.] within a similar 'special class format' and actually exacerbated the situation by refusing to apply for an age-variance for [A.K.] which could have facilitated his inclusion within the [D]efendant [S]chool [D]istrict's existing 'special class.'"  (Id. at 3.)  Without benefit of citation, Parent proceeds to rely upon "a recent NYSED investigation" which "determined that [A.K.] and his identified set of comparators were in fact educationally similar[]."  (Id.)  He baldly contends "NYSED's finding actually profiles as prima-facie proof that the plaintiff is educationally similar to his identified set of comparators." (Id.)

Further, Plaintiff would have the Court reject Defendants' alternative remedy argument, asserting what he seeks is "already being afforded to other students".  (Id.)  He also

argues that because he was "educated outside of the 'least restrictive environment (LRE)'", "the only form of relief which is capable of reconciling the damages suffered by [A.K.]" is compensatory education. (Id. at 4.)  Plaintiff does not address his initial requests for compensatory or punitive damages. (See id.; cf. Compl. at "WHEREFORE" clause.)  Finally, Plaintiff argues the issues and facts of this case are distinct from his case brought under Case No. 20-CV-4121; therefore, the Court's Killoran March 22, 2022 Order should not bar the Court's consideration of this action. (See id. at 4.)

Like the prior case, Case No. 20-CV-4763, (see supra), in this Opposition, Plaintiff does not support any of his arguments with citations to his Verified Complaint. (Compare PMC Response, in toto, with Compl., ECF No. 1.)

2. Analysis

a. The ADA & Section 504 Claims

After carefully reviewing Parent's Complaint, for substantially the same reasons articulated above (see supra at 17-19), Parent's ADA and Section 504 Claims in this action are dismissed.  Notably absent are allegations of deliberate or reckless indifference to A.K.'s rights or that the School District acted with gross misjudgment. (See Compl., in toto.)  To the extent Parent purports Defendants acted with bad faith (see id. ¶¶ 116-127), his allegations are both conclusory and vague; they

fail to plausibly allege bad faith.  Indeed, Parent's allegations are no more than a rehashing of his contention that A.K. has not been provided with a FAPE by the School District, i.e., a regurgitation of his IDEA claim.  This is insufficient to support his disability-based discrimination claims pursuant to the ADA or Section 504.  See Killoran March 22 Order, 2022 WL 866816, at *7. Hence, these claims are dismissed.

### b.    The Section 1983 Class-of-One Claim

As this Court has repeatedly instructed regarding class-of-one claims, "a complaint must make sufficient factual allegations in support of [the applicable] similarity requirement" and one must provide "more than a bare allegation that other individuals were treated differently."  Killoran August 2022 Order, 2022 WL 3309223, at *4 (internal quotation marks omitted). Yet, again, in support of his instant class-of-one equal protection claim, Parent relies upon allegations about "all 'alternately assessed special education students'" as compared to A.K.  (See Compl. ¶¶ 96-105 (emphases added).)  Such reliance is unavailing. It does not approach the "extremely high degree of similarity" between A.K. and a comparator, i.e., that the two are "prima facia identical", needed to plausibly allege a class-of-one claim.  See Killoran August 2022 Order, 2022 WL 3309223, at *6; see also Killoran August 2023 Order, 2023 WL 5532920, at *7 (dismissing class-of-one claim based upon allegations comparing "all

'alternately  assessed  special  education  students'"  with  A.K.
because  said  allegations  did  not  plausibly  allege  the  requisite
extremely  high  degree  of  similarity  between  A.K.  and  purported
comparators).   Parent's  allegations  about  four  other  "alternately
assessed  special  education  students"  being  similarly  situated  to
A.K.  fairs  no  better  given  the  conclusory  and  vague  nature  of  those
allegations.   (See Compl. ¶¶ 92-93, 106-108.)   Likewise,  the  fact
that  three  of  those  four  students  also  have  Down  Syndrome,  like
A.K.,  without  more,  does  not  plausibly  allege  the  prima  facie
identicalness  required  to  maintain  Parent's  class-of-one  claim.
(See id. ¶¶ 106-108); cf. Killoran August 2022 Order, 2022 WL
3309223, at *7 (rejecting  similar  allegations  as  not  sufficiently
prima facie  identical  to  support  a  class-of-one  claim  where  Parent
proffered  as  comparators  other  Down  Syndrome,  alternately  assessed
special  education  students), aff'd, 2d Cir. Seybert 2022 Appeal,
2023 WL 4503274.

To  the  extent  Plaintiff  relies  upon  "a  recent  NYSED
investigation"  to  support  his  class-of-one  claim  for  the  subject
2021-2022  school  year,  his  reliance  is  misplaced.   First,  the  Court
presumes  Parent  is  referring  to  the  N.Y.S  Education  Department's
March  6,  2023  Letter  to  the  Superintendent  of  Schools  for  the
School  District  (hereafter,  the  "NYSED  Letter").   (See Case No.
20-CV-4121, NYSED Letter, ECF No. 58 at 2-4.)   Second,  while  the
underlying  age  variance  request  was  initially  submitted  in  October

2021 for the 2021-2022 school year, the variance was not granted for that school year; instead, it was treated as a renewed application for the 2022-2023 school year and, thereafter, granted for that subsequent school year. (See id. at 2.)  Third, according to the N.Y.S. Education Department, inter alia:  "[a]ge range variances are limited in time and approved for only one school year"; "special classes have the potential to change from year to year"; and, "[t]he content of the curriculum and the focus of the class must be adjusted on a yearly basis to meet the needs of the students placed in the class".  (Id. at 3.)  Moreover, the determination that A.K. "has developmental and disability-related needs similar to other students in the 12:1+1 middle/high school special class" was made after a February 2023 site visit by N.Y.S. Education Department staff and related to the 2022-2023 school year.  (Id. at 3-4.)  Hence, its relevancy is limited to the 2022-2023 school year and does not apply to the subject 2021-2022 school year.   Accordingly, as the Court has previously found, "notwithstanding the NYSED's granting A.K. an age variance for a subsequent academic year, because Plaintiff fails to plausibly allege how A.K.'s circumstances for the [2021-2022] academic year were prima facie identical to any alleged similarly situate[d] student, his [class-of-one] Equal Protection claim cannot survive the present Dismissal Motion."  Killoran August 2023 Order, 2023 WL 5532920, at *8.

c.   <u>Plaintiff's Request to Reopen</u>

In this action, Plaintiff also moved the Court for an order annulling the subject decisions of the IHO and the SRO and remanding his administrative due process complaint back to the N.Y.S. Education Department for reconsideration given the SEQA's ultimate approval of an age variance (hereafter, the "Reopen Motion").  (<u>See</u> Case Docket, Motion for Order to Reopen, ECF No. 21.)  Parent relies upon Title 8, Section 276.8 of New York Codes, Rules and Regulations ("NYCRR") for his requested relief.  (<u>See</u> <u>id.</u> at 3-4.)  Defendants oppose the Reopen Motion arguing this Court is without authority to provide such relief.  (<u>See</u> Case Docket, Reopen Motion Opp'n, ECF No. 22.)  At the October 2023 Omnibus Hearing, the Court heard oral argument on the Reopen Motion; it reserved decision.

Having reviewed the relevant filings and considered the parties' arguments for and against the Reopen Motion, said Motion is denied.  The Court agrees with Defendants that Section 276.8 of Chapter IV of Title 8 of the NYCRR pertains to appeals and other proceedings before the Commissioner of the N.Y.S. Education Department, and <u>not</u> appeals before a federal district court, since it clearly states: "Applications for reopening are addressed solely to the discretion of the commissioner . . . ."  8 NYCRR § 276.8(a); (<u>see also</u> Reopen Motion Opp'n ¶ 9 ("No federal authority exists providing a federal court jurisdiction to reopen

a final, state administrative decision pursuant to 8 NYCRR [§] 276.8. That regulation provides that reopening petitions are addressed 'solely' to the discretion of the [State Education Department ("SED")] Commissioner and it applies only to administrative decisions which are before the SED Commissioner in his or her role as an appellate adjudicator.")). Plaintiff's reliance on Section 276.8(c) is equally unavailing, since it, too, addresses the authority of the SED Commissioner regarding appeals and other proceedings before him or her and not the authority of federal courts deciding appeals of final decisions of the NYSED. Cf. 20 U.S.C. § 1415(i)(2)(A). Moreover, as Defendants astutely assert:

> Based on the IDEA, a federal judge's jurisdiction is statutorily limited to hearing only civil actions "with respect to the [due process] complaint presented"; further, federal jurisdiction exists only if the due process complaint is before the federal court <u>as a final decision</u> following exhaustion of administrative procedures. Petitioner's motion to reopen rendered administrative decisions is based on the incorrect assumption that a federal judge can intervene at the administrative level in a matter which is before the federal court in final status, as opposed to adjudicating the appeals of those final administrative decisions.

(Reopen Motion Opp'n ¶ 8 (brackets in original; emphasis added) (first citing 20 U.S.C. § 1415(i)(2)(A); then citing <u>Cave v. E. Meadow Union Free Sch. Dist.</u>, 514 F.3d 240, 245 (2d Cir. 2008)).) Accordingly, the Reopen Motion is denied.

Nonetheless, the Court recognizes Parent's frustration given the unfolding of events within the context of the underlying administrative proceeding and the corresponding state court action, such that Parent was precluded from requesting discretionary relief from the SED Commissioner.  (See Reply to Reopen Motion Opp'n, ECF No. 23.)  However, Plaintiff's IDEA cause of action remains before this Court, together with his request for compensatory education for Defendants' alleged deprivation of a FAPE for A.K. for the 2021-2022 school year.  Given the unique sequence of events regarding said school year and the October 2021 age variance request, pursuant to 20 U.S.C. § 1415(i)(2)(C)(ii),[15] the Court will also consider additional evidence in deciding whether a violation of the IDEA occurred during the 2021-2022 school year, thereby warranting an award of compensatory education.

---

[15]  Clause (C) of § 1415(i)(2) provides:

In any action brought under this paragraph, the court-

> (i)  shall receive the records of the administrative proceedings;
> (ii)  shall hear additional evidence at the request of a party; and
> (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

20 U.S.C. § 1415.

C.   **Case No. 23-CV-1114** (re: 2021-2022 School Year[16])

This action is Plaintiff's appeal of SRO Hauge's January 20, 2023 Decision, which dismissed Plaintiff's appeal of IHO Schiro's December 14, 2022 Decision regarding Parent's administrative due process complaint ("ADPC") initiated on the basis that the School District's termination of A.K.'s Aide and threatened termination of A.K.'s Educational Consultant – both of whom had allegedly advocated on behalf of A.K. – violated the IDEA. At the administrative level, Parent claimed the School District's alleged retaliatory actions against the Aide and Educational Consultant "impeded the appropriate discernment of [A.K.'s] education placement, as well as his ability to receive a [FAPE]," thereby violating the IDEA. (Case Docket, Compl., ECF No. 1, ¶ 4; see also id. at ¶¶ 38, 39.)  The SRO dismissed Parent's appeal of the IHO's decision because she was "unable to discern specific allegations regarding a denial of FAPE, and particularly with respect to the identification, evaluation, or placement of [A.K.]" since those allegations were "not sufficiently detailed to describe how the actions impeded [A.K.'s] right to a FAPE, impeded the [P]arent's opportunity to participate in the decision-making

---

[16]   (See Case Docket, IHO Schiro Dec. 14, 2022 Decision, ECF No. 12-2 (identifying the 2021-2022 school year as the relevant academic year).)

process, or caused a deprivation of educational benefits to [A.K.]" (SRO Decision, ECF No. 12-3, at 6.)

In addition to appealing the SRO's dismissal decision, based upon Parent's claimed violation of the IDEA due to the alleged retaliatory treatment of A.K.'s Aide and Educational Consultant by the School District, Parent also claims a violation of Section 504.   (See id., in toto.)   He seeks: (1) "back-end compensatory education"; (2) compensatory and punitive damages; and (3) an equitable "order" removing Ambrosini as a CSE member.

### 1.   The Parties' Positions

Defendants seek dismissal of Plaintiff's IDEA cause of action for substantially the same reason articulated by the SRO in dismissing Parent's underlying ADPC, i.e., Parent's allegations are threadbare and conclusory; therefore, Parent fails to plausibly state a violation of the IDEA. (Case Docket, PMC Letter, ECF No. 7, at 3.)   Relatedly, they contend Parent's threadbare and conclusory allegations do not meet federal pleading standards warranting Rule 12(b)(6) dismissal.   (See id. at 2.)

Similarly, as to Plaintiff's Section 504 cause-of-action, since are no allegations the School District: (1) "denied A.K. a reasonable accommodation"; (2) "the [School] District discriminated against A.K."; or (3) "acted with deliberate or reckless indifference, or bad faith or gross misjudgment", Plaintiff has not set forth a plausible Section 504 claim.   (Id.)

Faced with such a void, Rule 12(b)(6) dismissal is proper.  (See id.)

Finally, to the extent Plaintiff alleges McLaughlin was intimidated to change her recommendation regarding A.K.'s educational placement with threats the School District would terminate her company's contract with it, because this was not put forth by Plaintiff in the ADPC, Defendants maintain this is an unexhausted claim.  Therefore, it must be dismissed pursuant to Rule 12(b)(1).  (See id. at 1.)  Moreover, Defendants purport the allegations regarding McLaughlin are subject to dismissal on grounds of res judicata and collateral estoppel.  (See id.; see also id. n.1.)

In opposing Defendants' Rule 12(b)(6) dismissal request, Parent would have this Court rule upon his alleged IDEA-related retaliation claim.  His opposition raises three arguments with purported facts not found in his Complaint.  (Compare Case Docket, Compl., with PMC Response, ECF No. 14.)  For example, as to A.K.'s Aide:  Parent argues the School District "staff[ed] a habitually intoxicated teacher to teach [A.K.]" and that when the Aide reported this to the School District, she was fired in retaliation.  (See id. at 3.)  Yet, the Aide "was simply seeking to facilitate, protect[,] and preserve [A.K.'s] right to receive a FAPE by reporting an extremely gross abuse that was occurring."  (Id. at 2, 3.)  Similarly, as to the Educational Consultant:  Parent

contends the Consultant "was knowledgeable of what was occurring with the intoxicated teacher, as well as a host of other abuses that were occurring to [A.K.] and had voiced her concern [to] the [D]efendants", which resulted in the School District curtailing the Consultant's "involvement not only with [A.K.], but with other students in the . . . [S]chool [D]istrict" (Id. at 4.) Parent argues the Consultant "was simply seeking to facilitate, protect, and preserve [A.K.'s] right to a FAPE, and thus was simply acting to facilitate, protect[,] and preserve a 'protected activity' as contemplated by the IDEA and [Section] 504." (Id.) Therefore, the School District's alleged curtailing of the Consultant's involvement with A.K. and other students was retaliatory, thereby violating the IDEA and Section 504. (See id.)

Regarding claims based upon alleged interference with and retaliation against McLaughlin, Plaintiff would have the Court reject Defendants' exhaustion and res judicata arguments. First, he contends administrative exhaustion would be futile given an earlier ruling by the IHO that retaliatory actions inflicted upon McLaughlin would not be recognized as violating the IDEA. (See id. at 5.) Second, Plaintiff argues res judicate is inapplicable as the prior ruling relates to a different set of circumstances and a different school year, but fails to identify either those circumstances or school year. (See id.)

Finally, Parent asserts this Court should not afford deference to the IHO's or SRO's decisions since whether interference with and retaliation against third-parties "who are engaged in 'protected activity' as contemplated by the IDEA and [Section] 504" by advocating for a disabled person's rights to a FAPE is not an issue within the purview of the administrative agencies who are the experts in deciding issues of educational policy. (See id.)

    2.  <u>Analysis</u>

        a.  <u>The IDEA Cause of Action</u>

Measured consideration of Parent's Complaint, as well as the underlying SRO's and IHO's decisions giving rise to this action, compel the conclusion that Parent fails to plausibly allege a violation of IDEA. Indeed, the Court agrees with Defendants that Plaintiff's purported allegations are actually "bald and threadbare conclusory legal contentions devoid of factual support." (PMC Letter at 2-3.) Rather, much like SRO Hauge, it is difficult for this Court "to discern specific allegations regarding a denial of FAPE and particularly with respect to the identification, evaluation, or placement of [A.K.]" (Case Docket, SRO Hauge Jan. 20, 2023 Decision, ECF No. 12-3, at 6.) That is so because, as with his ADPC, in the instant Complaint, "the [P]arent's claims that the alleged intimidation, interference, and retaliation [of A.K.'s Aide and Consultant] compromised [A.K's]

IDEA protections are not sufficiently detailed to describe how the actions impeded [A.K.'s] right to a FAPE, impeded the [P]arent's opportunity to participate in the decision-making process, or caused a deprivation of educational benefits to [A.K.]" (Id. (citations omitted).)    Even assuming, arguendo, Parent could maintain an IDEA-based retaliation claim premised upon actions directed to third-parties, his Complaint is devoid of factual allegations plausibly tethering those actions to the alleged deprivation of a FAPE for A.K.  (Compare id. at 7,[17] with Compl.)

_____

[17]  As SRO Hauge astutely stated:

> Although the [P]arent's most compelling argument would be that the [School D]istrict's actions influenced the recommendations made at [A.K.'s] CSE meetings, the [P]arent is not objecting to any recommendations made by the [School D]istrict in this [administrative due process] proceeding.  Additionally, as noted by the IHO, the [P]arent has raised challenges to the [School D]istrict's programming in prior hearings and for the 2021-22 school year, and an SRO determined that the [School D]istrict did not deny [A.K.] a FAPE. Additionally, in that proceeding and in a more recent proceeding regarding an April 2022 CSE meeting for [A.K.], SROs have determined that the [P]arent was able to fully participate in the development of the student's educational programs.    Accordingly, without a more detailed allegation as to how any acts of interference or retaliation on the part of the [School D]istrict against staff employed by the [School D]istrict impacted the identification, evaluation, or educational placement of the students, or the provision of a FAPE to [A.K.], the [P]arent's due process complaint notice does not provide a claim that

Moreover, Parent's contention "that it should be obvious that when a school district attempts to influence the educational placement decisions and methodological decisions of CSE member[s] and related service providers under the threat of employment termination that the independent rights of the subject student are inextricably directly effected" (Compl. ¶ 44), is merely a speculative conclusion, which does not plausibly allege an IDEA violation.  (Cf. SRO Hauge Jan. 20, 2023 Decision at 8 (stating "[P]arent's general claims about implementation of an IEP fail to contain a reference to a specific IEP or service that has not been implemented"); see also IHO Schiro Dec. 14, 2022 Decision at 5 (stating, in the instant underlying ADPC, Parent withdrew challenge regarding School District's alleged failure to complete A.K.'s "annual review CSE" for the 2022-2023 school year because it was the subject of another ADPC).)  To the extent Plaintiff seeks to maintain this cause of action by rectifying the dearth of plausible factual allegations in his Complaint by making such allegations in his Opposition, that attempt is unavailing; one cannot amend a complaint by asserting purported facts in an

---

can properly be adjudicated at an impartial hearing.

(SRO Hauge Jan. 20, 2023 Decision at 7 (citations omitted).)  The same holds true here:  Plaintiff's bald, conclusory allegations that A.K. was denied a FAPE in the absence of plausible factual allegations supporting same do not present an actionable IDEA claim.

opposition to a dismissal motion.  See Killoran March 2022 Order, 2022 WL 866816, at *7 n.9 (quoting K.D. ex rel. Duncan v. White Plains Sch. Dist., 921 F. Supp. 2d 197, 209 n.8 (S.D.N.Y. 2013) (citation omitted)).

As to Parent's claims regarding McLaughlin, the Court is wholly unconvinced Parent states a plausible IDEA-violation claim.[18]  In the vaguest manner, Parent generally complains "that within the context of an actual due process hearing," Ambrosini "sent a clandestine correspondence" allegedly threatening to terminate the employment of McLaughlin's company if McLaughlin did not make the educational placement recommendation for A.K. that Ambrosini sought.  (Compl. ¶ 25.)  Notably absent are: the date of this correspondence (see id. ¶¶ 25, 28); the date of the due process hearing (see id.); and, factual allegations supporting Parent's contention A.K. was denied a FAPE (see id. ¶¶ 22-29).

---

[18]  Having carefully reviewed the administrative record below, in this instance, the Court finds Parent sufficiently exhausted this claim at the administrative level.  While Parent's ADPC did not specifically reference a correspondence from Ambrosini to McLaughlin, in its due process answer and motion to dismiss, the School District did.  (Compare NYSED IHRS Case No. 571788, Due Process Compl., ECF No. 15-5 at 4-7, with NYSED IHRS Case No. 571788, Due Process Ans. & Mot. Dismiss, ECF No. 15-5 at 9-27, and Ex. B, IHRS Case No. 556183, IHO Schiro Nov. 12, 2021 Decision, attached to Ans. & Mot. Dismiss.)  Therefore, the issue of a correspondence from Ambrosini to McLaughlin was presented below.  See generally Compensatory Ed. Denial Order, 2022 WL 954851, at *6.  Accordingly, the Court declines to dismiss this claim pursuant to Rule 12(b)(1).

Such threadbare allegations fail to plausibly allege an IDEA-based violation.[19]   See generally <u>Killoran March 2022 Order</u>, 2022 WL 866816, at *3; <u>see also</u> <u>id.</u> at *8 ("It is well-settled that a complaint's factual allegations must be enough to raise a right to relief above the speculative level.  Thus, as is the case here, where the complaint tenders naked assertions devoid of further

---

[19]  Moreover, the Court would be remiss if it did not note it finds Parent's allegations regarding McLaughlin to be specious.  In one of its dismissal arguments presented to this Court, Defendants contend the Court previously considered and rejected a Section 504 claim by Plaintiff based upon a correspondence from Ambrosini to McLaughlin.  (<u>See</u> PMC Letter at n.1 (citing, <u>inter alia</u>, <u>Killoran v. Westhampton Beach Sch. Dist.</u>, No. 21-CV-3264, 2022 WL 4484630 (E.D.N.Y. Sept. 27, 2022) (defining "Correspondence" to be a March 5, 2021 letter from Ambrosini to McLaughlin regarding McLaughlin's placement recommendation for A.K.)).)   Indeed, in its <u>Killoran September 2022 Order</u>, pursuant to Rule 12(b)(1), this Court found Parent lacked standing to bring claims on behalf of third-party McLaughlin; therefore, it dismissed Parent's purported ADA-based and Section 504-based retaliation claims, as well as a Section 1983 free-speech claim, which claims were based upon the Correspondence.  Of relevance here, in the <u>Killoran September 2022 Order</u>, this Court stated:  "[N]owhere in their Complaint do Plaintiffs allege that after receiving the Correspondence, Dr. McLaughlin changed her recommendation for A.K.'s placement, or that A.K. was in fact denied benefits or services required by the Rehabilitation Act or the ADA."  <u>Id.</u> at *7.
     Given his apparent avoidance in identifying the correspondence to which he refers in the instant Complaint, but given its otherwise close similarities to the Correspondence addressed in the <u>Killoran September 2022 Order</u>, it is likely Parent is, indeed, referring to the same Correspondence which this Court already found was insufficient to maintain retaliation-based claims under the ADA and Section 504.  Neither reliance upon the Correspondence nor Parent's present allegations fare any better to plausibly state an IDEA-based retaliation claim, assuming, <u>arguendo</u>, such a claim exists.  <u>Cf., e.g.</u>, <u>Collins v. City of N.Y.</u>, 156 F. Supp. 3d 448, 457 (S.D.N.Y. 2016) (stating the "IDEA does not protect individuals from retaliation for attempting to enforce the IDEA").

factual enhancement, the plaintiff has not nudged his claim across the line from conceivable to plausible, thereby compelling dismissal of the complaint." (internal quotation marks and citations omitted)).   On this basis, Parent's IDEA-based retaliation claim regarding McLaughlin is dismissed.

b. The Section 504 Cause of Action

Again, after carefully reviewing Plaintiff's Complaint, the Court finds Plaintiff has failed to plausibly allege a cause of action under Section 504.  Notwithstanding that A.K. is disabled under the terms of Section 504, to which the School District is subjected, Plaintiff's Complaint lacks allegations that plausibly support his claims the School District did not provide reasonable accommodations to A.K. or discriminated against A.K. because of his disability.  See Killoran March 22 Order, 2022 WL 866816, at *7.   Additionally, as Defendants aptly argue, "there are no allegations that the [School] District acted with deliberate or reckless indifference, or bad faith or gross misjudgment." (PMC Letter at 3 (citing Killoran August 2023 Order, 2023 WL 5532920, at *7-8).)  This is fatal to Parent's Section 504 claim since such allegations are required to plausibly state a Section 504 discrimination cause of action.  See Pape, 2013 WL 3929630, at *11 (stating one must show a school district acted with deliberate or reckless indifference to a student's federally protected rights or with bad faith or gross misjudgment to maintain a Section 504 cause

of action (collecting cases)); <u>S.W.</u>, 528 F. Supp. 2d at 290 ("[P]laintiffs can rely on Section 504 to claim they are denied access to a free appropriate education, as compared to the free appropriate education non-disabled students receive, <u>if they can show that Defendants acted with bad faith or gross misjudgment</u> in the administration of disability services." (emphasis added)). Indeed, Plaintiff's Section 504 cause of action is little more than a restatement of his IDEA claim which, as this Court has repeatedly instructed Plaintiff, without more, is insufficient to survive a dismissal motion challenging a Section 504 claim; therefore, this Section 504 claim is dismissed.

D. **Case No. 23-CV-1115** (re: 2021-2022 School Year)

By this action, Parent challenges the January 18, 2023 Decision of SRO Harrington dismissing Parent's appeal of IHO Schiro's November 23, 2022 Decision wherein the IHO found the School District did not fail to provide A.K. a FAPE for the 2021-2022 School Year. (<u>See</u> Case Docket, Compl., ECF No. 1, ¶ 13.) At the administrative level, Parent argued the School District inadequately administered, disseminated, and used the N.Y.S. alternate Assessment Test (hereafter, the "Test"). In his instant Complaint, Parent alleges the School District "violated the IDEA, and thus by extension, [A.K.'s] right to receive an 'appropriately ambitious' FAPE, by virtue of failing to meaningfully utilize his 'alternate assessment testing results' towards the development of

his PLEPS[, _i.e._, "present levels of educational performance",] and the formulation of his academic goals for the 2021-2022 academic year." (<u>See</u> <u>id.</u> at "WHEREFORE" clause.)  He brings claims based upon alleged violations of the IDEA and Section 504; Parent seeks "back-end compensatory education".  (<u>See</u> <u>id.</u>)

       1.   <u>The Parties' Positions</u>

Because the School District answered the Complaint (<u>see</u> Case Docket, Answer, ECF No. 7 (denying Plaintiff's substantive allegations)), it moves for dismissal pursuant to Rule 12(c).  (<u>See</u> Case Docket, PMC Motion, ECF No. 8.)  Its dismissal request is confined to Plaintiff's purported Section 504 Claim only and not Plaintiff's IDEA Claim.

The School District maintains "[n]one of the allegations in the Complaint support a claim that [it] violated Section 504," highlighting that "the Complaint cited Section 504 in only two instances."  (<u>Id.</u> at 1 (citing Compl., ¶ 2, and "WHEREFORE" clause).)  In addition to the well-established three-pronged <u>prima facie</u> showing a plaintiff must make to maintain a Section 504 claim (<u>see, e.g.</u>, <u>supra</u> at 10-11 (quoting <u>2d Cir. Brown Appeal</u>, 2023 WL 4503278, at *2-3)), the School District relies upon the Second Circuit's instruction that, as to the third prong, _i.e._, showing a defendant's exclusion or discrimination was due to a plaintiff's disability, "[e]xclusion or discrimination may take the form of disparate treatment, disparate impact, or failure to make a

reasonable accommodation."  (PMC Letter at 2 (quoting B.C. v. Mount Vernon Sch. Dist., 837 F.3d 152, 158 (2d Cir. 2016)).)  With that focus, it articulates three arguments in support of dismissal. The School District first argues Plaintiff's Complaint lacks allegations supporting a contention that its "administration, utilization, and dissemination of the NYSAA evaluation constituted disparate treatment of A.K. based on disability discrimination." (Id. at 2.)  In that vein, Parent's Section 504-related allegations are that same as those alleged to make out an IDEA claim, which, without more, e.g., allegations of bad faith or gross misjudgment based on disability discrimination, are insufficient to show disparate treatment.  (See id.)  The School District next asserts Plaintiff's Section 504 claim cannot be one based upon a disparate impact theory since Parent does not point to a necessary "facially neutral policy" relating to NYSAA results which cause a disproportionate impact on a protected group of people.  (See id. at 2-3 ("Here, the Complaint did not allege a neutral policy regarding the NYSAA evaluation which significantly affected a protected group to which A.K. belonged.").)  Finally, since there are no allegations of a request for and denial of reasonable accommodations related to the NYSAA evaluation permitting A.K. to have meaningful access to the benefits of a FAPE, the School District maintains Parent cannot advance his purported Section 504 claim on this basis.  (See id. at 3.)

To the extent he opposes the School District's request to dismiss the purported Section 504 claim, Plaintiff would have the Court find the claim to be viable because the School District did not use "mandatory" alternate assessment testing in the development of A.K.'s academic goals. (Case Docket, PMC Response, ECF No. 15, at 2-3.) Parent baldly contends, "a school district's failure to utilize the standardized testing that is expressly mandated by regulation for use with 'alternately assessed students' is discriminatory because it illuminates disparate treatment and moreover effectuates a disparate impact." (Id.) He then postures:

> [T]he utilization of an "alternately assessed student's" "alternate assessment testing results" is absolutely fundamentally essential towards the provision of a FAPE, just a[s] conventional standardized testing has been deemed absolutely fundamentally essential towards the appropriate education of non-disabled students. Indeed, this is why it is mandated by regulation. . . . [T]o deem otherwise is patently discriminatory and moreover effectively facilitates a deprivation upon a disabled person's right to a FAPE.

(Id.) Notably absent from Parent's arguments are citations to allegations in his Complaint regarding either disparate treatment suffered by A.K. because of his disabilities or any disparate impact A.K. suffered due to said disabilities.

2.  <u>Analysis</u>

Notwithstanding Parent's cursory arguments to the contrary, a fair reading of Plaintiff's Complaint warrants the conclusion that, to the extent he asserts a cause of action premised upon Section 504, it is not advanced on either a theory of disparate treatment or disparate impact. (<u>See</u> Compl., <u>in toto</u>); <u>cf.</u> <u>B.C.</u>, 837 F.3d at 158-61 (instructing on the need for statistical evidence). Indeed, Parent has not included any allegations regarding the different treatment received by A.K. versus other students, abled or disabled. Rather, at most, Parent has alleged a violation of Section 504 premised upon the School District's alleged violation of A.K.'s IDEA rights to a FAPE. Without more, such a defectively alleged Section 504 claim cannot survive a dismissal motion. See <u>Killoran March 2022 Order</u>, 2022 WL 866816, at *7 ("[A] violation of the IDEA, without more, is insufficient to support a claim of disability-based discrimination under the ADA or Section 504." (citing <u>French</u>, 476 F. App'x 468, 472-73)). Instead, there must be plausible allegations "that the [S]chool [D]istrict acted with 'deliberate or reckless indifference to the student's federally protected rights' or with 'bad faith or gross misjudgment.'" <u>Id.</u> (quoting <u>Pape</u>, 2013 WL 3929630, at *11). Because there are no such allegations in the instant Complaint, Parent does not plausibly allege a viable Section 504 claim. Therefore, the School District's Dismissal

Motion is granted, and Plaintiff's Section 504 cause of action is dismissed.

E.    **Leave to Amend**

Since Plaintiff has not requested leave to amend any of the subject Complaints discussed in this Omnibus Order, he has not articulated any cures he would make to his pleadings to address their deficiencies.  See generally, e.g., TechnoMarine SA v. Giftports, Inc., 758 F.3d 493, 505 (2d Cir. 2014) (instructing a "plaintiff need not be given leave to amend if [he] fails to specify either to the district court or to the court of appeals how amendment would cure the pleading deficiencies in [his] complaint").  Considering: (1) the absence of a request to amend; (2) pro se Parent is, nonetheless, an attorney, whose filings are not entitled to special solicitudes; and (3) the expansive filing history of actions in this Court, in conjunction with this Court's having previously provided Parent unsolicited opportunities to file amended complaints, only to have such amended complaints again dismissed for failing to plausibly allege causes of action pursuant to the ADA, Section 504, and Section 1983, see, e.g., Killoran v. Westhampton Beach Sch. Dist., Case No. 19-cv-6663 (E.D.N.Y.), and Killoran v. Westhampton Beach Sch. Dist., Case No. 20-CV-4121 (E.D.N.Y.),[20] the Court declines to sua sponte grant Parent leave

---

[20]  Indeed, given the history of Parent failing to cure deficiencies in his pleadings when the Court has afforded him unsolicited leave

to amend any of the subject Complaints.  Cf. Porat v. Lincoln Towers Cmty. Ass'n, 464 F.3d 274, 276 (2d Cir. 2006) (holding district court did not abuse discretion in not addressing informal request to amend especially where "counsel did not advise the district court how the complaint's defects would be cured").

### CONCLUSION

Accordingly, **IT IS HEREBY ORDERED**:

I.  **As to Case No. 20-CV-4763:**

The Defendants' Motion to Dismiss (ECF No. 25 (construed as Defendants' Dismissal Motion)) is GRANTED; Plaintiff's remaining ADA, Section 504, and Section 1983 Class-of-One causes are DISMISSED.  The Clerk of Court is directed to CLOSE this case.

II.  **As to Case No. 22-CV-1632:**

A.  The Defendants' Partial Motion to Dismiss (ECF No. 8 (construed as Defendants' Dismissal Motion)) is GRANTED; Plaintiff's ADA, Section 504, and Section 1983 Class-of-One causes of action are DISMISSED;

B.  Plaintiff's Motion to Reopen (ECF No. 21) is DENIED;

C.  As to Plaintiff's remaining IDEA cause of action:

1.  Plaintiff shall serve a motion for summary judgment by no later than March 29, 2024;

---

to amend in other cases before it, the Court is hard-pressed to find such opportunities here would rectify Parent's deficient pleadings.

2.    The School District shall have <u>until May 3, 2024</u> to serve its response;

3.    Plaintiff shall have until May 24, 2024 to file a reply, if any; and

4.    As the moving party, once the summary judgment motion is fully briefed, Plaintiff is to file said fully briefed motion with the Court and ensure courtesy copies of same are provided to Chambers;

and

D.    In pursuing his remaining IDEA cause of action via summary judgment motion, in addition to the submitted administrative record (<u>see</u> ECF No. 7), in accordance with the Court's ruling (<u>see</u> <u>supra</u> at 31):

1.    Plaintiff may file additional evidence to support his claim of a violation of the IDEA by Defendants for the Court's consideration;

2.    Said submission of additional evidence, if any, is to be in the form of a Local Rule 56.1 Statement and is to be served together with Plaintiff's summary judgment motion; and

3.    Defendants may file a responsive counterstatement, which is to be served together with their response to Plaintiff's summary judgment motion.

III. **<u>As to Case No. 23-CV-1114</u>**:

The Defendants' Motion to Dismiss (ECF No. 7 (construed as Defendants' Dismissal Motion)) is GRANTED; Plaintiff's Complaint is DISMISSED. The Clerk of Court is directed to CLOSE this case.

IV.   **As to Case No. 23-CV-1115**:

A.   The School District's Partial Motion to Dismiss (ECF No. 8 (construed as School District's Dismissal Motion)) is GRANTED; Plaintiff's Section 504 cause of action is DISMISSED;

B.   If Plaintiff intends to pursue his remaining IDEA cause of action:

1.   He is to promptly cause the relevant administrative record to be filed with this Court;

2.   Within 30 days of the filing of the administrative record, Plaintiff shall serve his motion for summary judgment;

3.   The School District shall have 30 days thereafter to serve its response;

4.   Plaintiff shall have 21 days after service of the School District's response to file a reply, if any; and

5.   As the moving party, once the summary judgment motion is fully briefed, Plaintiff is to file said fully briefed motion with the Court and ensure courtesy copies of same are provided to Chambers; and

C.   If Plaintiff does not intend to pursue his remaining IDEA cause of action, he is to promptly file a Notice of Discontinuance.

**SO ORDERED.**

/s/ JOANNA SEYBERT
JOANNA SEYBERT, U.S.D.J

Dated:   February 26, 2024
         Central Islip, New York

Page 50 of 50